1  Ronald P. Oines (State Bar No. 145016)
   roines@rutan.com
2  Thomas C. Richardson (State Bar No. 244461)
   trichardson@rutan.com
3  RUTAN & TUCKER, LLP
   611 Anton Boulevard, Fourteenth Floor
4  Costa Mesa, California 92626-1931
   Telephone: 714-641-5100
5  Facsimile: 714-546-9035

6  Attorneys for Plaintiff
   ALTAIR INSTRUMENTS, INC.

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11 ALTAIR INSTRUMENTS, INC., a          Case No.   CV13 - 07448 ABC (AJWx)
   California corporation,
12                                        COMPLAINT FOR PATENT
                Plaintiff,                INFRINGEMENT
13
        vs.                               DEMAND FOR JURY TRIAL
14
   RODAN & FIELDS, LLC, a California
15 limited liability company;
   AMAZON.COM, INC., a Delaware
16 corporation; and DOES 1 through 10,

17              Defendants.

18

19        Plaintiff ALTAIR INSTRUMENTS, INC. ("Altair") as its Complaint against

20 Defendants RODAN & FIELDS, LLC, ("Rodan"), AMAZON.COM, INC.

21 ("Amazon") and Does 1 through 10, inclusive (collectively, "Defendants") alleges

22 as follows:

23                    **JURISDICTION AND VENUE**

24        1.    This is an action for patent infringement arising under the Patent Laws

25 of the United States, Title 35, United States Code. This Court has jurisdiction over

26 the subject matter of this action pursuant to 28 U.S.C. § 1338(a) (action arising

27 under an Act of Congress relating to patents) and 28 U.S.C. § 1331 (federal

28 question).

Rutan & Tucker LLP
attorneys at law

2118/024004-0018
6227046.1 a10/08/13                    -1-

COMPLAINT FOR PATENT
INFRINGEMENT
DEMAND FOR JURY TRIAL

1      2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b)

2   and 28 U.S.C. § 1391(c).  On information and belief, each of the Defendants resides

3   in this judicial district because, among other things, each has sold and/or offered to

4   sell in this judicial district products that infringe the patent-in-suit.

5                                              **THE PARTIES**

6      3.     Plaintiff Altair is a California corporation with its principal place of

7   business at 1834 Palma Drive, Suite F, Ventura, California 93003.

8      4.     On information and belief, defendant Rodan is a California limited

9   liability company with its principal place of business located at 111 Maiden Ln.,

10  Suite 400, San Francisco, California.

11     5.     On information and belief, defendant Amazon is a Delaware

12  corporation with its principal place of business located at 410 Terry Ave., N, Seattle,

13  Washington.

14     6.     The true names and capacities, whether individual, corporate, associate

15  or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Altair,

16  which therefore sues said defendants by such fictitious names.  Altair will seek leave

17  of this Court to amend this Complaint to include their proper names and capacities

18  when they have been ascertained.  Altair is informed and believes, and based

19  thereon alleges, that each of the fictitiously named defendants participated in and are

20  in some manner responsible for the acts described in this Complaint and the damage

21  resulting therefrom.

22     7.     Altair alleges on information and belief that each of the defendants

23  named herein as Does 1 through 10, inclusive, performed, participated in, or abetted

24  in some manner, the acts alleged herein, proximately caused the damages alleged

25  hereinbelow, and are liable to Altair for the damages and relief sought herein.

26     8.     Altair alleges on information and belief that, in performing the acts and

27  omissions alleged herein, and at all times relevant hereto, each of the Defendants

28  was the agent and employee of each of the other defendants and was at all times

Rotan & Tucker LLP
attorneys at law

2118/024004-0018
6227046.1 a10/08/13                                    -2-

COMPLAINT FOR PATENT
INFRINGEMENT; DEMAND FOR JURY
TRIAL

1  acting within the course and scope of such agency and employment with the

2  knowledge and approval of each of the other Defendants.

3  <u>**GENERAL ALLEGATIONS**</u>

4      9.     On June 5, 2001, United States Patent No. 6,241,739, entitled

5  "Microdermabrasion Device And Method Of Treating The Skin Surface" ("the '739

6  patent"), was duly and legally issued by the United States Patent and Trademark

7  Office (the "USPTO").

8      10.    By assignment, Altair is the owner of all rights, title and interest in and

9  to the '739 patent, including all rights to recover for any and all past infringement

10  thereof.  A true and correct copy of the '739 patent is attached hereto as **<u>Exhibit</u>**

11  **<u>"A."</u>** Altair has given notice to the public of its patent by marking its own products

12  with the '739 patent in conformity with 35 U.S.C. § 287(a).

13  <u>**CLAIM FOR RELIEF**</u>

14  **(Infringement of the '739 Patent)**

15      11.    Altair realleges each and every allegation set forth in paragraphs 1

16  through 10 above, and incorporates them herein.

17      12.    Defendants make, use, sell, offer to sell, and/or import into the United

18  States a microdermabrasion device known as the "Macro Exfoliator" which contains

19  each and every element of at least one claim of the '739 patent, including in this

20  Judicial District.  Users of the Macro Exfoliator also infringe the '739 patent.  As

21  such Defendants have infringed and are infringing the '739 patent and will continue

22  to do so, unless enjoined by this Court.  Defendants directly infringe the '739 patent,

23  and are also liable for contributory and inducing infringement.

24      13.    Defendants' infringement of the '739 patent has been and will continue

25  to be willful, wanton and deliberate with full knowledge and awareness of Altair's

26  patent rights, unless enjoined by this Court.

27      14.    Altair has been damaged in an amount to be determined at trial, but

28  which is no less than a reasonable royalty, and irreparably injured by Defendants'

Rutan & Tucker, LLP
attorneys at law

2118/024004-0018
6227046.1 a10/08/13

-3-

COMPLAINT FOR PATENT
INFRINGEMENT; DEMAND FOR JURY
TRIAL

1  infringing activities.  Altair will continue to be so damaged and irreparably injured
2  unless such infringing activities are enjoined by this Court.

<u>**PRAYER**</u>

4      WHEREFORE, Altair prays for the following relief:

5           a.    Preliminary and permanent injunctions pursuant to 35 U.S.C.
6  § 283 enjoining and restraining Defendants, their officers, directors, agents,
7  employees, successors and assigns, and all those acting in privity or concert with
8  Defendants or any of them, from further infringement of the '739 patent;

9           b.    A judgment by the Court that Defendants have infringed and are
10  infringing the '739 patent;

11           c.    An award of damages for infringement of the '739 patent,
12  together with prejudgment interest and costs, said damages to be trebled by reason
13  of the intentional and willful nature of Defendants' infringement, as provided by
14  35 U.S.C. § 284;

15           d.    An award of Altair's reasonable attorneys' fees pursuant to 35
16  U.S.C. § 285 in that this is an exceptional case;

17           e.    Altair's costs of suit herein; and

18           f.    For such other and further relief as this Court deems just and
19  proper.

20  Dated:  October 8, 2013         RUTAN & TUCKER, LLP
21           RONALD P. OINES
         THOMAS C. RICHARDSON

22
23           By: _____
         Ronald P. Oines
         Attorneys for Plaintiff ALTAIR
24           INSTRUMENTS, INC.
25
26
27
28

Rutan & Tucker LLP
attorneys at law

2118/024004-0018
6227046.1 a10/08/13         -4-        COMPLAINT FOR PATENT
INFRINGEMENT; DEMAND FOR JURY
TRIAL

1    ## DEMAND FOR JURY TRIAL

2        Altair hereby demands a trial by jury.

3    Dated:  October 8, 2013            RUTAN & TUCKER, LLP
                                        RONALD P. OINES
4                                       THOMAS C. RICHARDSON

5                                       By: _____
6                                              Ronald P. Oines
                                        Attorneys for Plaintiff
7                                       ALTAIR INSTRUMENTS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker LLP
attorneys at law

2118/024004-0018
6227046.1 a10/08/13            -5-

COMPLAINT FOR PATENT
INFRINGEMENT; DEMAND FOR JURY
TRIAL



US006241739B1

(12) **United States Patent**
Waldron

(10) Patent No.: **US 6,241,739 B1**
(45) Date of Patent: **Jun. 5, 2001**

(54) MICRODERMABRASION DEVICE AND METHOD OF TREATING THE SKIN SURFACE

(75) Inventor: Stephen H. Waldron, Camarillo, CA (US)

(73) Assignee: Altair Instruments, Inc., Camarillo, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 09/440,020

(22) Filed: Nov. 12, 1999

(51) Int. Cl.$^7$ ................................................ A61B 17/50
(52) U.S. Cl. ................................................ 606/131
(58) Field of Search ........................... 606/131; 600/562, 600/569

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,701,559 * | 2/1955 | Cooper ................................. | 600/569 |
| 2,712,823 | 7/1955 | Kurtin . | |
| 2,867,214 | 1/1959 | Wilson . | |
| 2,881,763 | 4/1959 | Robbins . | |
| 2,921,585 | 1/1960 | Schumann . | |
| 3,964,212 | 6/1976 | Karden ............................. | 51/170 PT |
| 4,378,804 | 4/1983 | Cortese, Jr. . | |
| 4,957,747 | 9/1990 | Stiefel ................................. | 424/691 |

| | | | |
|---|---|---|---|
| 5,012,797 | 5/1991 | Liang et al. . | |
| 5,037,431 | 8/1991 | Summers et al. .................... | 606/131 |
| 5,037,432 | 8/1991 | Molinari ............................ | 606/131 |
| 5,100,412 | 3/1992 | Rosso ................................ | 606/131 |
| 5,207,234 | 5/1993 | Rosso ................................ | 128/898 |
| 5,800,446 | 9/1998 | Banuchi ............................ | 606/131 |
| 5,810,842 | 9/1998 | Di Fiore et al. ................... | 606/131 |
| 5,971,999 * | 10/1999 | Naldoni ........................... | 606/131 |
| 6,042,552 * | 3/2000 | Cornier ............................ | 600/562 |

OTHER PUBLICATIONS

News Release, American Society for Dermatologic Surgery, *An Update on Micro–Dermabrasion*, May 19, 1999 pp. 1–2.
Nidecker, Anna, "Microdermabrader Offers Alternative to Laser, Peels", [*Skin & Allergy News* 29(3) :48, 1998 International Medical News Group], pp. 1–2.

* cited by examiner

*Primary Examiner*—Jeffrey A. Smith
(74) *Attorney, Agent, or Firm*—Michael J. Ram; Koppel & Jacobs

(57) **ABSTRACT**

This invention provides a treatment tool and tissue collection system, for remove of outer layers of skin to provide a revitalized, fresh skin surface, and a method of using same, comprising an abrasive tipped tool mounted on the end of a tube, said tube being connected to a source of vacuum. The vacuum aids in maintaining intimate contact between the abrasive tip and the skin during the treatment process and transports the removed tissue to a collection container.

15 Claims, 4 Drawing Sheets





*Fig 1*

*Fig 2*

EXHIBIT _A_, PAGE _7_



EXHIBIT A, PAGE 8

U.S. Patent          Jun. 5, 2001          Sheet 3 of 4          US 6,241,739 B1



EXHIBIT A, PAGE 9



*Fig 12B*

*Fig 12A*

*Fig 13*

*Fig 14A*

*Fig 14B*

US 6,241,739 B1

1

# MICRODERMABRASION DEVICE AND METHOD OF TREATING THE SKIN SURFACE

## BACKGROUND OF THE INVENTION

This invention provides a treatment tool and tissue collection system for remove of outer layers of skin to provide a revitalized, fresh skin surface. This objective is to remove dead and old skin cells without damaging the remaining skin surface and without the use of powdered abrasive materials because these materials may result in undesirable side effects.

## DESCRIPTION OF THE PRIOR ART

Dermabrasion, also referred to as microdermabrasion, is a process for removal of dead cells from the outermost layer of the skin, referred to as the epidermis, clean out blocked pores, and enhance skin tone. Additionally, the margins of acne scars and other traumatic scars can be erased and aging spots and sun damaged skin can be polish off. This must be accomplished without injuring the lower two layers, namely, the dermis and the subcutaneous layer or lower dermis. Typically, the skin surface is treated a minimum of 5 times spaced 7 to 10 days apart. This is then followed by periodic maintenance sessions. The benefits are:

1. poor, dull skin is enhanced by a gentle resurfacing of the superficial skin layers,
2. expression lines typically seen on the forehead and around the mouth are softened,
3. fine, crepey lines on the cheeks, generally caused by aging and sun damage are reduced,
4. pigment changes and skin discoloration are reduced,
5. enlarged pores are reduced and clogged pores typical in acne conditions are exfoliated and cleaned out, and
6. margins of superficial acne marks, stretch marks, burn scars and surgical scars can be smoothed.

Use of abrasion techniques can be traced back to the ancient Egyptians who used alabaster and pumice to remove blemishes and rough spots and to make the skin smooth and soft. More recently, abrasive tipped devices or rotating brushes and cylinders coated with abrasive particles, such as diamond dust, have been used to remove skin layers (U.S. Pat. Nos. 2,712,823; 2,867,214; 2,881,763; 2,921,585). U.S. Pat. No. 5,800,446 describes a stick, glove finger tip or glove palm coated with an abrasive material which is rubbed over the skin surface to provide a polishing action. U.S. Pat. No. 3,964,212 directed to a pneumatic grinding machine for flat surfaces, incorporates a rotating grinding tool enclosed in a housing with air flowing over the surface to collect dust created by the grinding operation. U.S. Pat. No. 4,378,804 is directed to a skin abrasion device which uses flowing water to rotate an abrasive brush and create a vacuum to remove loosened skin particles. The rotating brush is usually used in conjunction with a liquid detergent or medicinal compound applied to the skin surface being scrubbed. Chemicals, ultrasonic oscillating tips (U.S. Pat. No. 5,012,797) and lasers have also been used for a more aggressive abrasion. U.S. Pat. No. 5,037,431 describes the use of a pressurized jet of a liquid, such as water or sterile saline, to fragment and remove diseased tissue without harming surrounding healthy tissue. This device operates in conjunction with vacuum aspiration to remove the liquid and fragmented tissue.

The present trend is to abrade the skin surface using powdered aluminum oxide or a liquid topical composition

2

containing suspended aluminum oxide (U.S. Pat. No. 4,957, 747). U.S. Pat. No. 5,037,432 provides for the pressurized delivery, using compressed air, of a powdered, abrasive substance and the removal of the abrasive substance and loosened skin tissue using a vacuum. The abrasive substance is typically microcrystals of quartz, metal, or aluminum oxide. The powdered abrasive is blown through a wand which has a hole in the skin contact end to provide access of the abrasive to the skin surface being treated. An alternative is to cause the aluminum oxide powders to flow by applying a vacuum to the exhaust side of a container holding the abrasive powder and entraining the powder in a flowing gas stream. The powder is then drawn by the vacuum through a treatment tool, across the skin surface to abrade or rub off the epidermis and then recovered along with the skin particles in a collection chamber (U.S. Pat. Nos. 5,100,412; 5,207,234; 5,810,842). This process is similar to "bead-blasting". A potential disadvantage of all of these techniques is that particles can be lodged in the skin and a substantial amount of aluminum oxide and cells, which have to be properly disposed of, may be left behind on or in the skin.

While no toxic effects have been shown from aluminum oxide left on or in the skin, this material has been shown to cause inflammatory changes to the lungs in workers who have inhaled aluminum oxide. (Schwarz, Y, et al., "Evaluation of Workers Exposed to Dust Containing Hard Metals and Aluminum Oxide" *Am J of Ind Med,* 34(20;177–82) August 1999). Also, the eyes must be protected from the highly abrasive dust, which can injure the cornea. Therefore, it is recommended that workers using these devices wear breathing masks and glasses to provide protection from ophthalmic and respiratory damage. Similar protection is suggested for patients being treated. It is also possible that particles of the abrasive material can be left imbedded in the skin surface resulting in long term irritation and provide a situs for bacterial infections.

## SUMMARY OF THE INVENTION

The device for microdermabrasion comprises a hollow tube with and abrasive material permanent attached to a skin contacting end. The abrasive coated tip is moved over the skin surface while a vacuum is applied through the tube to the skin surface to remove cells abraded from the skin surface. The vacuum also causes the skin to be held in intimate contact with the abrasive tip during the treatment procedure.

## DESCRIPTION OF THE FIGURES

FIG. 1 is a schematic drawing of a device incorporating features of the invention.

FIG. 2 is a partial cutaway view of a treatment tube and filter assembly used in the device of FIG. 1.

FIG. 3 is a schematic drawing of the vacuum flow path of the device of FIG. 1.

FIG. 4 is a cutaway side view of the end of the treatment tube.

FIG. 5 is an enlarged view of the circled portion of FIG. 5A.

FIGS. 6A and 7A, are cutaway side views of two different treatment tubes usable with the device of FIG. 1.

FIGS. 6B and 7B are end views of the two different treatment tubes of FIGS. 6A and 7A.

FIG. 8 is a cutaway side view of the end of a sloped treatment tube.

FIG. 9 is a cutaway side view of the end of a tapered treatment tube.



EXHIBIT A, PAGE 11

US 6,241,739 B1

3

FIG. 10 is a cutaway side view of a valved treatment tube.

FIG. 11 is a cutaway side view of the end of a treatment tube with a second tube for delivery of a supplemental treatment fluid.

FIG. 12A is a side cutaway side view of the end of a treatment tube with an enlarged, sloped end.

FIG. 12B is an end view of the treatment tube of FIG. 12A.

FIG. 13 is a side cutaway side view of the end of a treatment tube with an enlarged, sloped concave end.

FIG. 14A is a view of a rectangular shaped treatment surface with the handle being the conduit for the vacuum.

FIG. 14B is a cutaway side view of the end of a treatment tube with an enlarged, rectangular shaped end.

DETAILED DESCRIPTION OF THE INVENTION

The invention provides the capability to perform micro-dermabrasion without the potential health risks or hazards of using a flowing, powdered metallic substance such as aluminum oxide. This is generally accomplished by the use of a tube having a treatment tip with an abrasive material permanently attached thereto. The term "tube" or "tubular" used herein refers to an elongated hollow structure of any cross section, which includes, but is not limited to, a round, oval, square or rectangle cross section. The abrasive coated end piece, which may also have various different shaped cross sections, may be secured to the treatment tip or be removable and interchangeable. The abrasive tip is rubbed over the skin surface being treated. The tube and related instrumentation also provides a vacuum collection and an optional filter system for collection of the skin cells removed by the procedure, the skin cells being aspirated through a hole or holes in the central portion of the treatment tip. The vacuum also aids in making an intimate contact between the skin and the abrasive coated tip.

FIG. 1 shows the overall system which comprises a housing 10 which encloses a vacuum pump 24, an ON/OFF switch 12, a gauge 14 to measure the level of vacuum and a valve 16 to adjust the vacuum. While not necessary for operation of the invention, shown mounted on the external surface of the housing 10 is a filter assembly 18. Attached to the filter assembly 18 is a hollow tube or wand assembly 20 upon which the treatment tip 22 is mounted. The other end of the filter assembly 18 is connected to the vacuum pump 24 located inside the housing 10.

FIG. 2 shows the wand assembly 20 comprising tubing 26 connecting the tip 22 and filter assemble 18. Within the filter assembly 18 is a filter pad 28 which collects the loosened skin tissue and prevents the skin tissue or collected body fluids and oils from entering the vacuum pump. The various different tips 22 are discussed in detail herein below. The tubing 26 is flexible so that it is easy to manipulate the tip and to allow ready connection of the wand assembly 20 to an upper hollow extension 30 on the external surface of the filter assembly 18 and a connector tube 32 on the tip. Since the system uses vacuum, the connections are self-sealing.

A lower hollow extension 34 extending from the filter assembly 18 fits into a matching hole on the main housing 10. The filter assembly 18 is easily removable so that it can be replaced after each patient and disposed of. The filtration pad 28 inside the filter housing 18 catches the debris but allows air to easily flow through the pad. The lower hollow extension 34 allows air pulled through the filter assembly 18 to be drawn into the vacuum pump 24.

4

FIG. 3 shows the flow of the air stream through the vacuum system. It comprising a vacuum pump 24, filter assembly 18, tubing 26 which connects the filter to the treatment tip 22 and vacuum line 36 connecting the filter assembly 18 to the vacuum pump 24. The vacuum pump 24 is operated at a fixed speed to produce a fixed vacuum level. To control the level of vacuum applied through the treatment tip 22 to the skin, a valve 16 vents air into the system, thus reducing the amount of vacuum. Gauge 14 allows the level of vacuum to be monitored. Of course, the vacuum pump can be operated at different speeds to change the level of vacuum applied.

Referring to FIG. 2, a vacuum is applied through the tube 26 to a hole 38 in the treatment tip 22. The tip 22 is brought into contact with skin, the vacuum causing the skin to be pressed against a roughened surface on the end 40 of the treatment tip. As the tube is manually moved across skin the roughened surface abrades the epidermis dislodging cells from the surface. The vacuum causes the dislodged cells to flow into the wand assembly 26. The level of abrasion depends on the level of vacuum applied to the treatment tip and the size of the abrasive particles attached to the treatment tip.

FIG. 4 is a side view of the working end of the treatment tube 22. The end of the treatment tube 22 has diamond grit 42 preferably adhered to the end of a metal tube by a plating process using nickel 44 as a binder. The nickel 44 is applied in a controlled manner so that sufficient nickel is present to hold each piece of diamond in place, but yet allow a faceted portion of the diamond to be exposed, the sharp edges of the diamond providing the cutting edges. A diamond particle size of around 0.0035 inches (63–75 microns) produces a smooth and uniform removal of skin surface. However, diamond particles from about 50 to about 150 microns can be used to produce different levels of abrasion, the larger particles removing more skin cells and performing the cell removal more rapidly. However, if the particles are to large the dermis can be damaged and injury to the second and third layers of skin can occur. Very fine particles remove few skin cells and act more in a polishing manner. Other abrasive materials, such as aluminum oxide, can be bonded to the treating tool tip or the tip itself can have a roughened surface cut into the end thereof. Use of an adhered aluminum oxide of about 100 grit ($151\mu$) provides a coarse (aggressive) treatment, and use of about a 120 grit ($127\mu$) material provides a medium level of treatment. Particles with a higher grit (i.e. small size particles) would create more of a polishing effect. Of course, many different hard abrasive materials known to those skilled in the art, such as silicon carbide, silicon oxide, and various metal nitrates can be used in place of the diamond or aluminum oxide.

The dimensions and materials used to construct the wand assembly 20 is not critical. However, a preferred treatment tip 22 is formed from a 12 mm OD stainless steel tube with a 6 mm ID and a diamond coated end. The stainless steel/diamond tool can be steam or chemical sterilized between uses without damage. A first alternative would be to have a single use or single patient tube which is made of plastic, the end being coated with aluminum oxide, or similar abrasive materials. The abrasive can also be adhered with an adhesive. A further alternative would be a tube, which could be stainless steel, plastic or other stiff tubular material, with a suitable removable and replaceable tip or a tip with an abrasive end surface formed by a machining process.

FIG. 6a shows a removable disc 46 sized to fit over the end 40 of the tube 22. The disc 46 has an abrasive end or

US 6,241,739 B1

5

abrasive material attached to its outer end. During the procedure various disc with different abrasive characteristics can be interchanged and at the conclusion of the procedure the disc(s) 46 can be discarded.

The end of the tube can also be made abrasive by machining the surface as shown in FIGS. 7a and 7b in a manner commonly called knurling. Diamond shaped projections 48 are raised on the surface for abrading in any direction. This would be similar to the construction of wood and metal files. The tip as shown in FIG. 7b can also be provided which raised portions tapered and oriented in only one direction, similar to a saw teeth, except the tooth would only be a few thousands of an inch high, to achieve smooth abrading of the surface.

Besides providing different means of abrasion on the end of the treatment tip 22, the contour or shape of the tip can be varied. FIGS. 6a and 7a show a flat end. The flat end can provide a greater surface area in contact with the skin for an aggressive removal of surface cells. A concave surface as shown in FIG. 4, in conjunction with the vacuum applied to the skin surface results in a more uniform cutting surface on the skin. For easier access to difficult to reach locations the roughened ends can be sloped, as shown in FIG. 8, or tapered, rounded or cone shaped, as shown in FIG. 9, to better treat curved surfaces, such as the area between the cheek and the nose.

The device uses a vacuum pump 24 which generates a constant level of vacuum, which is controlled (lessened) by the venting of air into the system by the valve 16 mounted in the housing 10. As an alternative, the full vacuum can be applied to the wand assembly 20. The level of vacuum can then be decreased by air vented into the system through vent hole 50 by adjusting flow control valve 52 mounted on the wand 20 or treatment tube 22, as shown in FIG. 10. The valve 52 can be configured to be a simple on/off control or variable so that suction can be readily adjusted by the operator while performing the procedure.

While the treatment tube can be used alone to abrade the skin and the vacuum system can be configured to primarily pick up the loosened skin cells, it has been found that applying the vacuum through the hole 38 in the end of the treatment tip 40 provides an unexpected advantage. The skin being treated is pulled against the abrasive tip, thus increasing the effectiveness of the tissue abrasion and removal process. Sealing off ambient air raises the level of vacuum and makes the abrasion more aggressive. The concave tip as shown in FIG. 4 is particularly effective when used in conjunction with a vacuum, as it provides a larger surface area for the skin/abrasive material contact.

As a further variation, the treatment tip 22 can have an enlarged abrasive coated end 56, 58 which is flat and slopped or sloped and concave such as shown in FIGS. 12A and 13 respectively. While a single hole 38 in the center of the end 56 may be used for applying the vacuum, the efficacy of the abrasive tip can be improved by using several holes 38 therein FIG. 12B is an end view showing an example of a flat, sloped abrasive tip with multiple openings for application of the vacuum to the skin surface. An end view of the concave tip of FIG. 13 would have a similar appearance. Further, while FIGS. 12A and 13 show the end to be part of the treatment tip 22 it could be a separate removable piece as shown in FIGS. 6a and 6b. These configurations have particular utility in treating large flat body surfaces such as the chest, back and legs of an individual. They can also be used where a large abrasive treatment surface is desired but it is preferential to spread out the applied vacuum so that it

6

does not aggressively suck skin into the tip or suck the skin into the tip at a single point.

FIG. 11 shows a second tube 54 mounted on the treatment tip 22. The tube could be used to allow the metered use of chemicals to enhance the abrasion or supply or other liquids to reduce friction.

To use devices embodying the invention the vacuum is applied, through the treatment tool, to the area of the skin to be treated while the abrasive surface, which surrounds the applied vacuum, is moved over the skin surface to be treated. The abrasive tip is typically moved over the skin surface in a circular motion. However, a combination of vertical and horizontal movements of the tip, with or without the circular movements, may also be used to assure that the skin area is uniformly treated. Also, if a particular skin blemish or abnormality is to be treated. The tip motion can be restricted to that particular portion of the skin.

FIGS. 14A and 14B show an elongated treatment end with a large central opening 59 for application of the vacuum to the skin. In this case the device has wide treatment, shaped like a razor, and elongated abrasive areas for debrading flat areas of skin.

While the invention has been shown and described with reference to different embodiments thereof, it will be appreciated by those skilled in the art that variations in form, detail, compositions and operation may be made without departing from the spirit and scope of the invention as defined by the accompanying claims.

For example, the vacuum does not have to be provided by a vacuum pump with controller housing but can be provided by a centrally located vacuum system such as may be available in a hospital or medical facility. However, to prevent contamination of the vacuum system the filter assembly should be provided to collect the tissue removed. The abrasive tip has been described as formed by adhering or attaching an abrasive material t thereto or machining the surface of the tip to create a roughened surface. However, one skilled in the art will recognize that there are numerous chemical and mechanical processes to create a roughened surface on the end of the treatment tip sufficient for performing the process described herein.

I claim:

1. A device for removing portions of the outer layers of skin comprising:
   a source of a vacuum, and
   a tube with an abrasive treatment tip thereon for dislodging cells from a surface being treated, the tube being attached to the source of vacuum so that a lumen through the tube has a reduced pressure therein which is less than the ambient pressure surrounding the tube, the abrasive treatment tip having at least one opening therein for applying the reduced pressure within the tube to a skin surface, said vacuum causing the skin being treated to have an increased area of contact with the abrasive tip, the vacuum also functioning to collect tissue or cells removed from the skin surface being treated.

2. The device of claim 1 wherein the source of vacuum is a vacuum pump enclosed within a housing, the housing have means thereon for monitoring and controlling the level of vacuum delivered.

3. The device of claim 1 further including means for varying the level of reduced pressure applied through the treatment tip.

4. The device of claim 3 wherein the means for varying the level of reduced pressure applied through the treatment tip is a valve mechanism mounted in the treatment tube.



EXHIBIT A, PAGE 13

US 6,241,739 B1

7

5. The device of claim 3 wherein the means for varying the level of reduced pressure applied through the treatment tip is a valve mechanism in operative connection to the source of vacuum.

6. The device of claim 1 wherein the abrasive tip has particles of diamond, aluminum oxide, silicon carbide, silicon oxide or metal nitrides attached thereto.

7. The device of claim 1 wherein the abrasive tip has a mechanically or chemically created roughened surface.

8. The device of claim 1 further including a collection filter disposed between the treatment tip and the source of vacuum so that all particulate matter entering the at least one opening in the abrasive treatment tip is collected therein.

9. A tubular device for performing micro-abrasion of a skin surface comprising a tubular device with a lumen there through, the tubular device having a first end with an abrasive surface and means on a second end thereof for attachment to a source of a vacuum to apply a negative pressure to a skin surface to be treated, said vacuum causing increased contact between the skin surface and the abrasive surface.

10. The tubular device of claim 9 wherein the abrasive surface on the first end comprises crystalline diamond pieces permanently secured to said first end.

11. The tubular device of claim 9 wherein the abrasive surface on the first end comprises crystalline aluminum oxide permanently secured to said first end.

8

12. A method of treating the skin surface of a patient to remove surface cells and reduce undesirable skin blemishes comprising

providing a tubular treatment tool with an abrasive skin contacting surface,

providing a pressure through a lumen within the tubular treatment tool which is less than ambient pressure surrounding the treatment tube, and

bringing the abrasive skin contacting surface into contact with the skin surface to be treated while said lesser pressure is delivered to the skin surface through the lumen and

moving the abrasive skin contacting surface across the skin surface.

13. The method of claim 12 wherein the abrasive skin contacting surface has an abrasive crystalline material adhered thereto.

14. The method of claim 13 wherein the abrasive crystalline material is selected from the group consisting of crystals of diamond, aluminum oxide, silicon carbide, silicon oxide and metal nitrides.

15. The method of claim 12 wherein the abrasive skin contacting surface is formed by a machining process.

\*    \*    \*    \*    \*



US006241739C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (6045th)

# United States Patent
Waldron

(10) Number: **US 6,241,739 C1**
(45) Certificate Issued: **Dec. 11, 2007**

(54) **MICRODERMABRASION DEVICE AND METHOD OF TREATING THE SKIN SURFACE**

(75) Inventor: **Stephen H. Waldron**, Camarillo, CA (US)

(73) Assignee: **Altair Instruments Inc.**, Camarillo, CA (US)

**Reexamination Request:**
No. 90/007,683, Aug. 22, 2005

**Reexamination Certificate for:**
| | |
|---|---|
| Patent No.: | 6,241,739 |
| Issued: | Jun. 5, 2001 |
| Appl. No.: | 09/440,020 |
| Filed: | Nov. 12, 1999 |

(51) Int. Cl.
| | |
|---|---|
| *A61B 17/54* | (2006.01) |
| *A61B 17/32* | (2006.01) |
| *A61B 17/00* | (2006.01) |
| *A61H 9/00* | (2006.01) |

(52) U.S. Cl. ................................................. 606/131
(58) Field of Classification Search ................ 606/131;
600/562, 569
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,881,763 A * 4/1959 Robbins ..................... 606/131

| | | | | |
|---|---|---|---|---|
| 3,214,869 A | | 11/1965 | Stryker | |
| 4,957,747 A | * | 9/1990 | Stiefel ........................ | 424/691 |
| 5,037,432 A | * | 8/1991 | Molinari ..................... | 606/131 |
| 5,122,153 A | | 6/1992 | Harrel | |
| 5,207,234 A | * | 5/1993 | Rosso ......................... | 128/898 |
| 5,810,842 A | * | 9/1998 | Di Fiore et al. ........... | 606/131 |
| 5,882,201 A | | 3/1999 | Salem | |
| 5,971,999 A | * | 10/1999 | Naldoni ...................... | 606/131 |
| 6,423,078 B1 | * | 7/2002 | Bays et al. ................. | 606/131 |
| 6,641,591 B1 | | 11/2003 | Shadduck | |

OTHER PUBLICATIONS

U.S. Appl. No. 60/150,782, filed Aug. 26, 1999, Inventor John H. Shadduck.

* cited by examiner

*Primary Examiner*—Sara S Clarke

(57) **ABSTRACT**

This invention provides a treatment tool and tissue collection system, for remove of outer layers of skin to provide a revitalized, fresh skin surface, and a method of using same, comprising an abrasive tipped tool mounted on the end of a tube, said tube being connected to a source of vacuum. The vacuum aids in maintaining intimate contact between the abrasive tip and the skin during the treatment process and transports the removed tissue to a collection container.



EXHIBIT A, PAGE 15

US 6,241,739 C1

1

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims 7 and 15 are cancelled.

Claims 1, 2, 6 and 9–13 are determined to be patentable
as amended.

Claims 3–5, 8 and 14, dependent on an amended claim,
are determined to be patentable.

New claims 16–18 are added and determined to be
patentable.

1. A device for removing portions of the outer layers of
skin comprising:

a source of a vacuum, and

a tube with [an abrasive] *a* treatment tip thereon for
dislodging cells from a surface being treated, *the treatment tip having an abrasive material permanently attached to an operating end thereof to provide a treatment delivery surface, the treatment delivery surface having an orientation fixed in regard to an axis extending longitudinally through the tube,* the tube being attached to the source of vacuum so that a lumen through the tube has a reduced pressure therein which is less than the ambient pressure surrounding the tube, the [abrasive] treatment [tip] *delivery surface* having [at least one opening] *one or more openings* therein for *continuously* applying the reduced pressure within the tube *through substantially all said one or more openings* to a skin surface, said *continuously applied* vacuum causing the skin being treated to have an increased area of contact with the abrasive *material permanently attached to the treatment* tip, the vacuum also functioning to collect tissue or cells removed from the skin surface being treated.

2. The device of claim 1 wherein the source of vacuum is
a vacuum pump enclosed within a housing, the housing
[have] *having* means thereon for monitoring and controlling
the level of vacuum delivered.

6. The device of claim 1 wherein the abrasive *material permanently attached to the treatment* tip [has] *comprises* particles of diamond, aluminum oxide, silicon carbide, silicon oxide or metal nitrides [attached thereto].

9. A tubular device for performing micro-abrasion of a
skin surface comprising a [tubular device] *tube* with a lumen
there through, the [tubular device] *tube* having a first end
with an abrasive surface *provided by an abrasive material permanently attached thereto,* the first end having one or
more openings in the abrasive surface, *said abrasive surface being at a fixed orientation to an axis through the lumen,* and
means on a second end [thereof] *of the tube* for attachment
to a source of a vacuum [to apply] *which continuously provides* a negative pressure *through said one or more*

2

openings *in the abrasive surface substantially simultaneously* to a skin surface to be treated, said vacuum causing
increased contact between the skin surface and the abrasive
*material attached to said surface of the first end.*

10. The tubular device of claim 9 wherein the abrasive
*material permanently attached to the* surface on the first end
comprises crystalline diamond pieces [permanently secured
to said first end].

11. The tubular device of claim 9 wherein the abrasive
*material permanently attached to the* surface on the first end
comprises crystalline aluminum oxide [permanently secured
to said first end].

12. A method of treating the skin surface of a patient to
remove surface cells and reduce undesirable skin blemishes
comprising

providing a tubular treatment tool with [an abrasive] *a*
skin contacting surface *having an abrasive material permanently attached to the end thereof, the skin contacting surface being non-rotational during use,*

providing [a pressure] through a lumen within the tubular
treatment tool *and one or more holes in the end of said tool a pressure* which is less than ambient pressure
surrounding the treatment tube, and

bringing the [abrasive] *end of the* skin contacting surface
*having an abrasive material permanently attached thereto* into contact with the skin surface to be treated
while said lesser pressure is delivered to the skin
surface through [the lumen] *the one or more holes in contact with the skin surface in the end of said tool,* and

moving the abrasive *material on the* skin contacting
surface across the skin surface.

13. The method of claim 12 wherein the [abrasive] *skin contacting* surface has an abrasive, crystalline material
adhered thereto.

16. *A microdermabrasion wand assembly for controlled removal by abrasion of outer layers of skin without the use of a separately applied abrasive material comprising:*

*a hollow tubular wand having an abrasive material permanently attached to an operative end of said tubular wand, a lumen extending through the length of the tubular wand providing a flow channel from one or more openings in the operative end of the tubular wand to a vacuum attachment end of the tubular wand, the one or more openings in the operative end of the wand being oriented for continuous contact with the skin surface to increase the area of skin contact with the operative end during use thereof in abrasively removing the layer of skin,*

*a source of a vacuum operatively attached to the vacuum attachment end of the tubular wand by a conduit connecting there between such that the vacuum provided by the vacuum source is applied through the lumen to the one or more openings in the operative end,*

*a valve interposed between the source of vacuum and the operative end, said valve operating to vary the level of vacuum applied through the one or more openings in the operative end, and*

*a filter interposed in the conduit between the source of vacuum and the operative end.*

17. *The microdermabrasion wand assembly of claim 16 wherein the abrasive material permanently attached is a crystalline material.*

18. *The microdermabrasion wand assembly of claim 17 wherein the crystalline material is selected from the group consisting of crystals of diamond, aluminum oxide, silicon carbide, silicon oxide and metal nitrides.*

\* \* \* \* \*

EXHIBIT A, PAGE 16

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Audrey B. Collins _____ and the assigned Magistrate Judge is _____ Andrew J. Wistrich _____ .

The case number on all documents filed with the Court should read as follows:

## CV13-07448 ABC (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

October 8, 2013
_____
Date

By   D. Lagman
_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐  Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐  Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐  Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

Ronald P. Oines SBN 145016, ro      s@rutan.com
Thomas C. Richardson SBN 244461, trichardson@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, CA  92626
Telephone: 714-641-5100
Facsimile:  714-546-9035
Attorneys for Plaintiff, Altair Instruments, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTAIR INSTRUMENTS, INC., a California corporation,<br><br>PLAINTIFF(S)<br><br>v.<br><br>RODAN & FIELDS, LLC, a California limited liability company; AMAZON.COM, INC., a Delaware corporation; and DOES 1 through 10,<br><br>DEFENDANT(S). | CASE NUMBER<br><br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within   __21__   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Ronald P. Oines, Esq., Thomas C. Richardson, Esq., Rutan & Tucker, LLP</u>, whose address is <u>611 Anton Boulevard, Fourteenth Floor, Costa Mesa, CA 92626</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

**DODJIE LAGMAN**

Dated:   OCT 8 2013

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*


American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| ALTAIR INSTRUMENTS, INC., a California corporation, | RODAN & FIELDS, LLC, a California limited liability company; AMAZON.COM, INC., a Delaware corporation; and DOES 1 through 10, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.) |
|---|---|
| Ronald P. Oines SBN 145016, roines@rutan.com<br>Thomas C. Richardson SBN 244461, trichardson@rutan.com<br>RUTAN & TUCKER, LLP<br>611 Anton Boulevard, Fourteenth Floor<br>Costa Mesa, CA  92626        Telephone: (714) 641-5100 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No      ☒ MONEY DEMANDED IN COMPLAINT: $ According to proof.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This is an action for patent infringement arising under the Patent Laws of the United States, Title 35, United States Code.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☒ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **TORTS** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

FOR OFFICE USE ONLY:    Case Number:    **CV13 - 07448 ABC (AJWx)**

| CV-71 (09/13) | CIVIL COVER SHEET | Page 1 of 3 |
|---|---|---|

UNITED STATE    )ISTRICT COURT, CENTRAL DISTRIC    )F CALIFORNIA

CIVIL COVER SHEET

**VIM. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes   ☒ No | **A PLAINTIFF?** Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?** Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside. | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside. | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose. | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**C.I. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | WESTERN |

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATE    )ISTRICT COURT, CENTRAL DISTRIC    )F CALIFORNIA

CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**  _____  DATE: October 8, 2013

Ronald P. Oines

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com